UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THINKING LIBERALLY MEDIA, INC., ET AL, <br><br> Plaintiff(s), <br><br> v. <br><br> ORANGE JUICE BLOG, ART PEDROZA, ET AL, <br><br> Defendant(s). | CASE NO. SACV 10-00139 DOC (RNBx) <br><br> **O R D E R GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |

Before the Court is a Motion for Default Judgment [27, 29] filed by Thinking Liberally Media, Inc's d/b/a The Liberal OC; Madison Alexander PR, Inc.; Daniel Chmielewski; Chris Prevatt; Ryan Trabuco; and Claudio Gallegos (collectively, "Plaintiffs"). After considering the moving papers and oral argument, the Court hereby PARTIALLY GRANTS and PARTIALLY DENIES Plaintiffs' Motion. The Court GRANTS default judgment as to Plaintiffs' claims of common law trademark infringement and unfair business practice but DENIES default judgment

as to Plaintiffs' claims for cybersquatting under 15 U.S.C. § 112(d); cybersquatting under 15 U.S.C. § 1129; conversion; and civil conspiracy.

**I.    Background**

This case tells the story of an ongoing rivalry between two blogs, the Orange Juice blog and the Liberal OC Blog, and depicts the resulting childish conduct by both parties. According to the Complaint, Plaintiff Chris Prevatt co-founded the Liberal OC blog, now owned by Plaintiff Thinking Liberally Media, Inc., in July 2006. Complaint, ¶ 21. Defendant Art Pedroza ("Pedroza") owns Defendant Orange Juice blog, a conservative blog that focuses on Orange County politics. Around April 2008, Pedroza began an unsuccessful campaign for Santa Ana City Council. As a volunteer with the campaign, Plaintiff Ryan Trabuco ("Trabuco") purchased the domain name www.artpedroza.com, which he used to create a campaign website. *Id.* at 23.

The Complaint alleges that Plaintiff Claudio Gallegos decided to leave his position at the Orange Juice blog in April 2008 because of his frustration with the negative tone in Pedroza's writing. *Id.* at ¶¶ 24-25. In August of 2009, Gallegos began writing for the Liberal OC blog. *Id.* at ¶ 27. The deterioration of Gallegos's friendship with Pedroza, coupled with the escalating tension between the blogs and their different political slants, served as the backdrop for the Complaint's claims against Defendants. Beginning in April 2009, Pedroza had began to publish negative and defamatory comments about Gellegos on his blog and on other sites, often pretending to be a childhood friend of Gallegos. *Id.* at ¶ 29. According to the Complaint, Trabuco also believed Pedroza was the source of anonymous online attacks against him. *Id.* at ¶ 30.

After learning that Pedroza did not own the domain name containing his name, Plaintiff Daniel Chmielewski ("Chmielewski") purchased the domain name www.artpedroza.com from Trabuco, and Chmielewki did not offer it for sale. *Id.* at ¶¶ 31-32. Upon learning of Chmielewski's purchase, Pedroza purchased numerous domain names on November 12, 2009, including, but not limited to www.madisonalexanderpublicrelations.com; www.liberalocblog.com; www.theliberalocblog.com; www.claudiogallegos.com; www.chrisleahprevatt.com; and www.ryangenetrabuco.com. *Id.* at ¶ 35. Pedroza then allegedly

1  emailed Plaintiffs and tried to demand that Chmielweski, who owns a public relations firm
2  named Madison Alexander PR, Inc., give him the www.artpedroza.com site in exchange for the
3  right to purchase the www.madisonalexanderpublicrelations.com site. *Id.* at ¶ 36. When
4  Chmielewski refused, Pedroza then placed the domain name on sale at godaddy.com at a starting
5  price of $1000, which Plaintiffs allege is a markup of 8,9991%. *Id.* at ¶¶37-38.

6  Plaintiffs aver that Pedroza then linked www.madison-alexanderpublicrelations.com to
7  the website of the North American Man Boy Love Association (NAMBLA), an organization
8  devoted to promoting the ability of men to have sex with underage boys without legal
9  consequence. Plaintiffs allege that despite repeated requests, Pedroza refused to remove the
10 linking, which caused devastating consequences to Chmielewski's PR business and to his
11 personal life, as he is a father, and works closely with youth in a variety of volunteer activities.
12 *Id.* at ¶¶40-43. After publicizing Pedroza's actions on the Liberal OC site, Pedroza modified the
13 linking to redirect visitors of www.madisonalexanderpublicrelations.com to a blog about "bad
14 public relations" and then to a website about hemorrhoids. *Id.* at 45.

15 Pedroza allegedly continued to engage in similar antics involving other domain sites that
16 he had purchased. On November 12, 2009, Pedroza purchased www.liberalocblog.com and
17 www.theliberalocblog.com and redirected anyone visiting those sites to the Orange Juice Blog.
18 Three days later, he redirected the links to NAMBLA's website. *Id.* at ¶ 47. Pedroza then
19 continued to replicate his actions with www.chrisleahprevatt.com, www.cladiogallegos.com, and
20 www.ryangenetrabuco.com, and once again, tried to demand that Plaintiffs give him
21 www.artpedroza.com in exchange for the right to purchase the various sites he had created and
22 linked to misleading websites. When Plaintiffs refused, Pedroza allegedly posted the sites for
23 sale with starting bids at $1000 or $2000. *See* Complaint at ¶ ¶ 46-60.

24 On November 15, 2009, Pedroza allegedly sent a threatening email to all of the Plaintiffs
25 in which he warned that if they did not give him "his" website, they would all "pay dearly." *Id.*
26 at ¶ 61. Acting through their counsel, in January 2010, Plaintiffs demanded that Defendants
27 "cease and desist" their use of the purchased domain names and transfer their ownership to
28 Plaintiffs. Defendants refused. *Id.* at 10.

3

1  On February 5, 2010, Plaintiffs filed their complaint ("Complaint") alleging claims of
2 common law trademark infringement; cybersquatting under 15 U.S.C. § 112(d); cybersquatting
3 under 15 U.S.C. § 1129; unfair business practice; conversion; and civil conspiracy against
4 Defendants Orange Juice Blog and Art Pedroza ("Pedroza"). Docket 1. On March 19, 2010,
5 Pedroza filed an answer. Docket 10.
6  On August 3, 2010, the Clerk entered a default as to Defendant Orange Juice Blog,
7 Docket 20, and on September 17, 2010, the Court issued an Order to Show Cause for why the
8 case against Defendant Orange Juice Blog should not be dismissed for lack of prosecution.
9 Plaintiffs filed their current motion on October 4, 201, Docket 27, and the Court discharged its
10 Order to Show Cause, Docket 33.

11 **II.    Legal Standard**

12  Federal Rule of Civil Procedure 55 provides that the Court may, in its discretion, order
13 default judgment following the entry of default by the Clerk. Fed. R. Civ. P. 55(b). Local Rule
14 55 sets forth procedural requirements that must be satisfied by a party moving for default
15 judgment. Upon entry of default, the well-pleaded allegations of the complaint are taken as true,
16 with the exception of allegations concerning the amount of damages. *See, e.g.*, *Geddes v. United*
17 *Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). However, "necessary facts not contained in the
18 pleading, and claims which are legally insufficient, are not established by default." *Cripps v.*
19 *Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are
20 insufficient, the Court may require the moving party to produce evidence in support of the
21 motion for default judgment. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th
22 Cir. 1987).

23  When a party applies for default judgment, "the court may conduct hearings or make
24 referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate
25 judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C)
26 establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R.
27 Civ. P. 55(b)(2).
28

4

### III. Discussion

#### A. Sufficiency of the Claim

Plaintiffs' Complaint alleges six different claims, but Plaintiffs failed to adequately allege sufficient facts for each of them.

##### 1. Common Law Trademark Infringement

To make a claim for trademark infringement,[1] Plaintiffs must establish: (1) that they possess a protectable ownership interest in a trademark, and (2) that the defendant has unlawfully infringed upon that interest. *Department of Parks v. Bazaar Del Mundo*, 448 F.3d 1118, 1124 (9th Cir. 2006).

Regarding the first factor, the Lanham Act protects both registered and unregistered trademarks. *Two Pesos Inc. v. Taco Cabana Inc,*, 505 U.S. 763, 768 (1992); *Halicki Films LLC v. Sanderson Sales and Marketing*, 547 F.3d 1213, 1225-26 (9th Cir. 2008). Plaintiffs allege that Defendants infringed upon the established trademarks of both Madison Alexander and the Liberal OC by creating either identical or similar names by purchasing websites named www.liberalocblog.com; www.theliberalocblog.com; and www.madisonalexanderpublicrelations.com. Plaintiffs allege that Madison Alexander has adopted its name as a trademark since its 2004 incorporation, and aver that a common law trademark search turns up the name Madison Alexander. Thus, the use of a similarly named website infringed on that trademark. *See* Complaint, ¶ 65-66. Likewise, Plaintiffs allege that the Liberal OC website had existed since 2006 and has advertisers and hundreds of daily visitors, thereby issuing it a common law trademark as well. The similar websites Pedroza allegedly created therefore were confusing to consumers of both plaintiffs. Plaintiffs allegations suffice to make a claim for common law copyright infringement against Defendants.

Relevant for the trademark infringement claim against Defendant Orange Juice blog,

---

[1] Plaintiffs' counsel describes this claim as one for "copyright infringement," rather than trademark infringement in its Memorandum of Points and Authorities in Support of its Motion for Entry of Default Judgment. The Court assumes this to have been a careless error.

5

1  specifically, are Plaintiffs' allegations that Pedroza linked the similarly named sites to the
2  Orange Juice blog, thereby implicating Orange Juice Blog in the trademark infringement.  The
3  allegations of the Complaint clearly suggest that even if Pedroza acted on his own accord in
4  purchasing the domain names and linking them to the Orange Juice blog, among other links, at
5  the very least, the Orange Juice blog had knowledge of its role in perpetuating the infringement
6  and allowed the resulting infringing to continue.

7  "The core element of trademark infringement is whether customers are likely to be
8  confused about the source or sponsorship of the products." *Reno Air Racing Ass'n , Inc. V.*
9  *McCord*, 452 F.3d 1126 (9th Cir. 2006).  Because Orange Juice blog had knowledged that it was
10 being linked to from some of the infringing sites, Orange Juice blog perpetuated the confusion.
11 The allegations are therefore sufficient to permit a granting of default judgment for common law
12 trademark infringement against Orange Juice blog.  Thus, the Court GRANTS default judgment
13 for this claim .

14            **2.     Cybersquatting Under 15 U.S.C. § 1125(d)**

15 15 U.S.C. § 1125(d) provides cyberpiracy protection against anyone who "without regard
16 to the goods or services of the parties . . . has a bad faith intent to profit from [using another's
17 trademark] . . . and registers, traffics in, or uses a domain name that . . . is identical or
18 confusingly similar to that mark . . . ." 15 U.S.C. § 1125(d).  The Court already found above that
19 the Plaintiffs sufficiently alleged that they had trademarks in the names Madison Alexander and
20 the Liberal OC.  Subsequently, it is also clear that the Complaint sufficiently alleges that
21 Pedroza bought the domain names resembling Madison Alexander and the Liberal OC with bad
22 faith and is liable for cybersquatting under this statute.  At the same time, however, the
23 Complaint fails to allege that Defendant Orange Juice Blog, an entity of unknown form, was
24 responsible for or even involved in the purchases of the domain names and the linking to its site.
25 *See* Complaint, ¶ 35 (alleging that Pedroza (with no mention of Orange Juice Blog's
26 involvement) retaliated against Plaintiffs by purchasing specific domain names).

27 The Complaint describes Pedroza's purchases specifically and his bad faith in doing so,
28 but fails to connect that requisite bad faith to Defendant Orange Juice Blog, against whom

6

default judgment is sought here. Indeed, though the Complaint often references Defendants collectively, it also at times explicitly references Pedroza's acts of cybersquatting, without any reference to Orange Juice blog's involvement. *See, e.g.*, Complaint, ¶ 126 (alleging that "Pedroza has participated in acts of unfair business and cybersquatting a [sic] previously mentioned against Plaintiffs in regards to the purchase of use of said domain names"). This differs from the common law trademark infringement claim, where the Complaint connects Orange Juice blog itself to the claim. For that reason, the Court DENIES default judgment as to this claim.

### 3. Cybersquatting Under 15 U.S.C. § 1129

The Complaint also alleges a cybersquatting claim under 15 U.S.C. § 1129, which has been transferred to 15 U.S.C. § 8131. The statute holds liable "[a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party . . . ." 15 U.S.C. § 8131 (1)(A). Plaintiffs aver that, by purchasing the domain names of www.claudiogallegos.com, www.chrisleahprevatt.com, and www.ryangenetrabuco.com, Defendants are liable under the statute. Again, as stated above, the Complaint's factual descriptions only allege a claim under the statute for Pedroza, who allegedly purchased the sites. The Complaint fails to allege sufficient facts implicating Defendant Orange Juice Blog under this statute as well, and therefore the Court DOES NOT grant default judgment as to this claim.

### 4. Unfair Business Practice § 17200[2]

Plaintiffs allege that Defendants have "engaged in deceptive, untrue, misleading, and unfair business practices towards the Plaintiffs" in competing against the Liberal OC blog. Complaint, ¶ 109. California's Business & Professional Code § 17200, also known as the Unfair Competition Law ("UCL"), prohibits, *inter alia*, "unlawful, unfair or fraudulent business act[s]."

---

[2]The Court assumes that this claim and its reference to "§ 17200" refers to the California Business and Professional Code § 17200.

Cal. Bus. & Prof. Code § 17200, *et seq.* To make a claim under the UCL, a plaintiff must allege that (1) defendant engaged in acts prohibited by the statute and that (2) plaintiff suffered actual injury as a result of defendant's actions. *Laster v. T-Mobile USA, Inc.*, 407 F. Supp.2d 1181 (S.D. Cal. 2005). The statute defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200, *et seq.*

An "unlawful business act or practice" is one which violates any other federal or state statute or common law. *See Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999). Plaintiffs' claim under the UCL incorporated all of its prior claims. Complaint, ¶103. Because that incorporation includes a claim for common law trademark infringement claim, for which the Court grants default judgment, Plaintiffs have alleged sufficient facts to grant default judgment on this claim.

Furthermore, unlike with all of its other claims other than common law trademark infringement, the Complaint alleges facts that implicate Pedroza as well as Orange Juice blog in the unfair business practice claim. The claim under the UCL sufficiently connects Orange Juice blog's connection to Pedroza's conduct, thereby enabling the Court to grant default judgment against Orange Juice blog. The Complaint specifically alleges that Pedroza posted unfair, negative postings about Plaintiffs on the Orange Juice blog, directly targeting Plaintiffs' blog and impacting advertising revenue. *See* Complaint, ¶ 112. The alleged linking of the trademarked sites to Orange Juice blog further implicated Orange Juice blog in unfair business practices, along with Pedroza. For these reasons, the Court GRANTS default judgment against Orange Juice blog for unfair business practices.

### 5. Conversion

The Complaint avers that, based on Plaintiffs' rights to the domain names, Plaintiffs had an ownership interest in the domain names that Pedroza purchased. Plaintiffs allege that Defendants purchased the domain names with the bad faith intent of selling them to make a profit with the "malicious purpose of preventing Plaintiffs from having access to those domain names" and harming Plaintiffs in the process. Complaint, ¶¶ 119-121

1  A claim of conversion requires a showing of "(1) plaintiffs' ownership or [r]ight to
2  possession of the property at the time of the conversion; (2) defendants' conversion by a
3  wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Hartford Financial*
4  *Corp. v. Burns*, 96 Cal.App.3d 591, 598 (1979)**.**

5  Plaintiffs attempt to stretch the claim of conversion beyond logic. Though Plaintiffs have
6  alleged sufficiently that Pedroza did not have the right to purchase the domain names he bought
7  and then tried to sell them, they do not argue that *they* had any ownership rights to the domain
8  names. Indeed, to have possession of the domain names, Plaintiffs would have needed to
9  purchase them. The fact that Pedroza did not have the right to have possession of the domains,
10 because he acted in bad faith as described above, does not mean that Plaintiffs' possessed the
11 domains at that time, given that they had not purchased them. They had a right to prevent others
12 from purchasing the domain names, but still needed to make the purchase themselves in order to
13 have possession of the domains. Plaintiffs have therefore not adequately alleged the first
14 element of a conversion claim.

15 Furthermore, though Plaintiffs have shown that Pedroza acted wrongfully, Plaintiffs'
16 complaint does not allege the sufficient elements as they apply to Defendant Orange Juice blog,
17 as there are no allegations of Orange Juice blog specifically being involved in Pedroza's
18 purchase of the domain names. The Complaint does not connect Pedroza's actions to his
19 involvement with Orange Juice blog.

20 The Court therefore DENIES default judgment against Orange Juice blog as to its
21 conversion claim.

### 6. Civil Conspiracy

23 In their civil conspiracy claim, Plaintiffs do allege a connection between Orange Juice
24 blog and Pedroza's conduct. Yet the connection is purely speculative. The Complaint states that
25 "[s]ince many of said domain names made by Defendant Pedroza link directly Orange Juice
26 [blog] it is permissible to say that Orange Juice and the rest of its contributors knew of the
27 wrongful acts taking place, [sic] on the website" and "[t]herefore, Defendant Orange Juice can
28 be seen as conspirators to commit multiple wrongful acts of cybersquatting and unfair business

practices in association with Defendant Pedroza because they could not have been independently accomplished and could only have been performed through mutual agreement of the two parties to do so." Complaint, ¶¶ 128-129.

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage ." *Vieux v. East Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir.1990) (citation and internal quotation marks omitted). The elements of a civil conspiracy claim require "substantial evidence" of: "1) the formation and operation of the conspiracy, 2) wrongful conduct in furtherance of the conspiracy, and 3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995). Furthermore, "actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission." *Id.* at 1343.

Plaintiffs' speculation that Orange Juice blog *knew* of Pedroza's planned conduct is insufficient to allege a civil conspiracy claim; Plaintiffs must allege, with the support of evidence, that Orange Juice blog *intended* the conduct. Plaintiffs' Complaint falls woefully short in this way, and relies solely on speculation and evidence of Orange Juice's knowledge, but not intent of Pedroza's actions. The Court DENIES Plaintiffs' request for default judgment against Orange Juice blog for civil conspiracy.

**B.     The Court's Discretion to Grant Default Judgment**

In evaluating whether to enter a default judgment, courts typically consider seven factors: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).   In applying the *Eidel* factors to the facts at issue here, the Court chooses to exercise its discretion in granting Plaintiff's Motion for Default Judgment.

### 1. The Possibility of Prejudice to Plaintiffs

Though it is true that if default judgment is denied against Orange Juice blog, Plaintiffs will have no other recourse against the blog, Plaintiffs would nonetheless still be able to pursue their case against Defendant Pedroza. Thus, the risk of prejudice to Plaintiffs is minimal, and denying Plaintiffs' Motion for the majority of the claims would not permanently deny them "the right to judicial resolution of the claims presented" in their Complaint. *See Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).

### 2 & 3. The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

As discussed above in great detail, Plaintiffs' Complaint insufficiently alleges a number of the claims as to Orange Juice blog. Instead, for many of the claims, the Complaint simply alleges the actions that Pedroza allegedly took, without offering evidence that he did so as an agent of the blog. Furthermore, Orange Juice blog is run and managed by a number of people–not simply Pedroza. Plaintiffs have failed to allege that the blog is therefore liable for any actions its owner has taken. Thus, this factors does not persuade the Court to grant default judgment against Defendant Orange Juice blog for those claims for which the Complaint does not state a connection between Pedroza's actions and the blog's liability.

### 4. The Sum of Money at Stake

Plaintiffs seek $600,000 for statutory damages, more than $17,000 in actual damages, and attorneys fees and costs. Though the Court agrees with Plaintiffs that the conduct involved here was willful, the Complaint has not demonstrated that the entire sum of money involved should be imposed upon Orange Juice blog, as opposed to Defendant Pedroza. The sum of money is too large to allow for a hasty imposition of a default judgment for all claims when Plaintiffs have not alleged sufficient facts to grant default judgment.

### 5 & 6. The Possibility of a Dispute Concerning Material Facts and Whether the Default Was Due to Excusable Neglect

As stated many times throughout this Order, the Court is concerned by Plaintiffs' failure

to allege a connection between Defendant Pedroza's actions and Orange Juice blog sufficient to warrant imposing liability on Orange Juice blog for all of Pedroza's actions. The Court has not heard from a representative answering for Orange Juice blog itself, and, though that is the case in every default judgment, the Court is particularly concerned about imposing default judgment in this case, where it has only received an answer from Pedroza, who owns the Orange Juice blog. In considering these issues, the Court deems granting default judgment appropriate only as to those claims for which there is minimal risk of a dispute over material fact, given Plaintiffs' thorough allegations.

### 7. The Strong Public Policy Favoring Decisions on the Merits

Here, as always, this factor cuts against granting default judgment. The Court exercises its discretion cautiously in not granting default judgment for the majority of Plaintiffs' claims, and allows them to be decided on the merits.

### C. Damages

#### 1. Statutory Damages

Plaintiffs' request statutory damages pertaining to 15 U.S.C. § 1117(d) for each domain name involved in the litigation. Because the Court does not grant default judgment under that statute, the request for statutory damages is DENIED..

#### 2. Actual Damages

Plaintiffs request actual damages in the amount of $17,000 to compensate Plaintiff Madison Alexander PR, Inc. for its lost profits as a result of Defendants' actions. Because these damages emerged directly from the trademark infringement and unfair business competition for which the Court granted default judgment, the request for actual damages is GRANTED.

#### 3. Attorneys Fees and Costs

The Court has discretion to grant attorneys fees and costs, and would ordinarily be inclined to do so under Local Rule 55-3. Plaintiffs, however, claimed attorney fees under 15 U.S.C. § 1129, but the Court does not grant default judgment as to that claim, and, consequently,

does not award attorneys fees under the statute. Plaintiffs also assert their right to attorneys fees under 15 U.S.C. 117(a), which covers reasonable fees in "exceptional cases." The Court does not find this case to be an exceptional one under the statute, and notes that the alleged conduct occurred in response to actions initiated by Plaintiffs. Plaintiffs also failed to explain the costs of $555.

Thus, based on the lack of support for the attorney's fees and costs requested, the request is DENIED.

**IV. Disposition**

For the foregoing reasons, Plaintiff's Motion for a Default Judgment is PARTIALLY GRANTED and PARTIALLY DENIED. The Court hereby:

    1. GRANTS Plaintiffs' Motion for an entry of Default Judgment as to the claims for trademark infringement and unfair business practice, but DENIES Plaintiffs' Motion as to all other claims. Counsel for Plaintiffs are directed to prepare and lodge a judgment for the Court's signature within ten (10) days of the date of this Order.

    2. DENIES Plaintiffs' request for statutory damages.

    3. GRANTS Plaintiff's request for actual damages of $17,000.

    4. DENIES Plaintiff's request for Attorneys Fees.

    5. DENIES Plaintiff's request for costs in the amount of $555.

IT IS SO ORDERED.

DATED: November 19, 2010

                                                    _____

                                                        DAVID O. CARTER

                                                  United States District Judge