Todd E. Gallinger, SBN 238666
GALLINGER LAW
20 Truman, Suite 109
Irvine, CA 92620
P: 949.862.0010
F: 949.861.6582
tgallinger@gallingerlaw.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| THINKING LIBERALLY MEDIA, INC. d/b/a THE LIBERAL OC, a California Corporation; MADISON ALEXANDER PR, INC., a California Corporation; DANIEL CHMIELEWSKI, an individual; CHRIS PREVATT, an individual; RYAN TRABUCO, an individual; and CLAUDIO GALLEGOS, an individual<br><br>PLAINTIFFS,<br><br>vs.<br><br>ORANGE JUICE BLOG, a business entity form unknown; ART PEDROZA, an individual; and DOES 1 though 15, inclusive<br><br>DEFENDANTS. | **Case No.: SACV 10-00139 DOC (RNBx)**<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT<br><br>Hearing Date: December 19, 2011<br>Time: 8:30 a.m.<br>Place: Courtroom 9D<br>Before: District Judge David O. Carter |

# **TABLE OF CONTENTS**

I.  INTRODUCTION……………………………….…………..1

II.  SUMMARY OF FACTS……………………………………..1

III.  EVIDENTIARY MATTERS…………………………….……..2

IV.  ARGUMENT………………………………………….……...2

    A. Common Law Trademark Infringement………………......3

        1.  Plaintiffs Have Established Trademarks at Common Law and Used These Marks Prior to Defendant's Infringing Use of the Marks……………………………………………….3

        2.  Defendant's Use of Established Marks Created a Likelihood of Confusion………………......................................5

           a.  Similarity of the Marks………………….……...5

           b.  Relatedness of the Goods or Services and Marketing Channel……………………………………......6

           c.  Strength of the Mark…………………………..7

           d.  Degree of Care Likely to be Exercised by Consumer……………………………………...7

    B. CYBERSQUATTING UNDER 15 U.S.C. §1125(d) ……...8

        1.  Defendant Had a  Bad Faith Intent To Profit From the Marks

           a.  Defendant Had No Rights in the Domain Names…..8

           b.  Defendant Redirected Consumers to Webpages Containing False and/or Misleading Information……………....9

           c.  Defendants Offered to Sell Domain Names to the Mark Owners and To Third Party's for Financial Gain..11

        2.  Defendants Registered and/or Used A Domain Name that was Identical or Confusingly Similar to Plaintiffs Mark….11

    C. CYBERSQUATTING UNDER 15 U.S.C. §8131………….12

**D. PLAINTIFFS' DAMAGES**……………………………12

    **1. Statutory Damages**………………………………13

    **2. Actual Damages**……………………………......14

    **3. Attorneys Fees and Costs**……………………14

**E. CONCLUSION**…………………………………14

## TABLE OF AUTHORITIES

15 U.S.C. § 1117……………………………………………1,12,13,14

15 U.S.C. § 1125…………………………………………1,8,9,11

15 U.S.C. § 8131……………………………………………1,11,12,14

F.R.C.P. 8………………………………………………..2

F.R.C.P. 36………………………………………………..2

F.R.C.P. 56………………………………………………..2

F.R.E. 801………………………………………………..2

*American Petrofina v. Petrofina of California, Inc.,*

    596 F.2d 896 (9th Cir. 1979)……………………………..3

*AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979)……………5

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986)…………………………3

*Brookfield Communs., Inc. v. West Coast Entertainment Corp.,*

    174 F.3d 1036 (9th Cir. 1999)……………………………6,7

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)……………………………2

*E. & J. Gallo Winery v. Spider Weds Ltd.,*

    286 F.3d 270, 278 (5th Cir. 2002)………………………..13

*Employers Council on Flexible Complensaion v. Feltman,*

    2010 WL 2545435 at *7 (4th Cir. 2010)…………………..13

*Goto.com Inc. v. Walt Disney Co.,* 202 F.3d 1199 (9th Cir. 2000)………..5,7

*Kiva Kitchen & Bath, Inc. v. Capital Distributing, Inc.,*

    319 Fed.Appx. 316 (5th Cir. 2009)…………………………...13

*Lindy Pen Co. v. Bic Pen Corp.,*

    982 F.2d 1400 (9th Cir. 1993)…………………………………14

*Rivera v. Phillip Morris, inc.,* 395 F.3d 1142 (9th Cir. 2005)……………3

*Schmidneiny v. Weber,* 319 F.3d 581 (3rd Cir. 2003)……………………13

*Sengoku Works Ltd. v. RMC Int'l Ltd.,* 96 F.3d 1217 (9th Cir. 1996)…….3

*St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,*

    573 F.3d 1186 (11th Cir. 2009). ……………………………..13

*Toho Co. v. Sears, Roebuck & Co.,* 645 F.2d 788 (9th Cir. 1981)………...3

## MEMORANDUM OF POINTS AND AUTHORITIES\

### I.    INTRODUCTION

Plaintiff's move for Summary Judgment with respect to their claims of common law copyright infringement and "Cybersquatting" in violation of 15 U.S.C. §§ 1225 (d) and 8131 (formerly 1229).  Default was entered against Defendant ORANGE JUICE BLOG, a business entity form unknown, on July 28, 2010.  Plaintiffs now move for entry of Summary Judgment against Defendant ART PEDROZA, requesting from the Court actual damages for the common law copy right infringement, the maximum statutory damages for the violations of U.S.C. §§ 1225 (d) and 8131, as specified in 15 U.S.C. § 1117 (a), and attorneys fees, as permitted by 15 USC §§ 1117(a) and 8131 (2).

### II.    SUMMARY OF FACTS

As proven in the concurrently filed declarations and other papers, Plaintiffs and Defendant were involved with competing websites which both report on Orange County Politics.  Plaintiffs and Defendant have engaged in a rivalry over the years, due to competition for the same readers and advertisers and also due to differences in political opinions.

On November 12, 2009, Defendant PEDROZA registered numbers domain names violating the common law trademarks of Plaintiffs and also consisting of individual Plaintiffs' names.  These websites include: www.theliberalocblog.com, www.liberalocblog.com, www.madisonalexanderpublicrelations.com, www.chisleahprevatt.com, www.claudiogallegos.com, and www.ryantrabuco.com.

After registering the names, PEDROZA then offered them for sale to Plaintiffs. When Plaintiffs refused, Defendant, on the day after registration, posted them for sale with the internet company www.GoDaddy.com.  In order to induce Plaintiffs to purchase the domain names, Defendant PEDROZA then forwarded the domain names to his own website and extremely offensive materials, including the website of the North American Man Boy Love Association (NAMBLA) (which promotes pedophilia), homosexual pornography, and graphic pictures of hemorrhoids.

## III. EVIDENTIARY MATTERS

Defendant PEDROZA has represented himself in pro per, as is his right, in this matter. Unfortunately, he has not generally not conducted himself in the ways required by the Federal Civil Procedure and the Local Rules of this Court. This includes in the filing of his answer, which does not admit or deny specific the specific paragraphs of Plaintiffs' Complaint, but instead just states Defendant's views with regards to each section. F.R.C.P. 8(b) & (c). Regardless of its failure to conform, the statements in Defendant's Answer are Admissions and admissible evidence under F.R.E. 801 (d)(2). Defendants Answer is attached as Exhibit 1 to Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law, filed concurrently herewith.

Defendant PEDROZA has additionally refused to comply with Discovery Requests and Orders. Defendant was ordered three times by this Court to respond to Plaintiff's Requests for Production of Documents and Interrogatories, but refused to respond with required verifications. Additionally, Defendant failed to respond timely to Plaintiffs' Requests for Admission, and as such all Requests should be deemed admitted. FRCP 36(a)(3). Plaintiffs' Requests for Admission Set One (RFA) are attached to Plaintiffs' Statement of Uncontroverted Facts and Conclusions of Law as Exhibit 2. Defendant did, however, serve late and unverified responses to Defendant's Requests for Admissions (RFA Responses). In order to fully inform the Court, Plaintiff has attached these late received and unverified responses to their Statement of Uncontroverted Facts and Conclusions of Law as Exhibit 3.

## IV. ARGUMENT

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). The moving party for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is "genuine" if the evidence is such that a

1    reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty*
2    *Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.,* 395 F.3d 1142,
3    1146 (9th Cir.2005). An issue is "material" if its resolution could affect the outcome of
4    the action. *Anderson,* 477 U.S. at 248; *Rivera,* 395 F.3d at 1146.

5                    **A. Common Law Trademark Infringement**

6          To prevail on a claim for trademark infringement under California common law, a
7    plaintiff prove allege only (1) existence of a protectable mark and (2) the likelihood of
8    the infringing mark being confused with their mark. *American Petrofina v. Petrofina of*
9    *California, Inc.*, 596 F.2d 896, 897 (9th Cir. 1979) ("[W]hosoever first adopts and uses
10   a trade name, either within or without the state, is its original owner"); *Toho Co., v.*
11   *Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981) ("Without likelihood of
12   confusion there is no infringement under the California common law of trademarks").

13                 **1.   Plaintiffs Have Established Trademarks at Common Law and**
14                        **Used These Marks Prior to Defendant's Infringing Use of the**
15                        **Marks**

16         At common law, a trademark may be obtained by (1) adopting and using the
17   trademark in association with goods and services; (2) the mark must be placed in actual
18   use and be associated in the mind of the public with those particular goods or services;
19   (3) the mark must be used in commerce. S*ee Sengoku Works Ltd. v. RMC Int'l Ltd.*, 96
20   F.3d 1217, 1219 (9th Cir. 1996)

21         Plaintiffs have shown that they have a common law trademark on the marks
22   "Madison Alexander" and "Liberal OC", and that they established their trademarks
23   before the Defendant purchased the websites.  Plaintiff MADISON ALEXANDER PR,
24   INC. ("MADISON ALEXANDER") was formed and incorporated on or about
25   September 2004. Declaration of Daniel Chmielewski dated 11/20/11(Chmielewski
26   Decl.) at ¶ 2.  At this time, the company purchased the domain name
27   www.madisonalexanderpr.com to be used as the company's website and the company
28   adopted "MADISON ALEXANDER" as its name. Chmielewski Decl. at ¶ 2.  This

trademark is used in association with the corporation's primary service of conducting high technology public relations and marketing communications for profit, including strategic message development, media relations, product review management, investor relations, and other public relations matters. Chmielewski Decl. at ¶¶ 3 & 4.  The company has achieved recognition with the name MADISON ALEXANDER, including appearing first in the search results of google.com (the leading internet search engine) for that name.  Chmielewski Decl. at ¶5, Exhibit 1 (Google search results for "Madison Alexander").  Additionally, MADISON ALEXANDER has won numerous awards in the field of Public Relations.  Chmielewski Decl. at ¶6.

Plaintiff THINKING LIBERALLY MEDIA, INC. d/b/a THE LIBERAL OC (LIBERAL OC) operated an active website that was created in 2006. Chmielewski Decl. at ¶ 8; Declaration of Chris Prevatt dated 11/20/11(Prevatt Decl.) at ¶¶4, 14. It publishes new stories on a variety of issues specifically relevant to politics in Orange County, California.  Chmielewski Decl. at ¶ 7; Prevatt Decl. at ¶ 4. LIBERAL OC's blog widely known within Orange County and leverages this readership into commerce via website advertising.  Prevatt Decl. at ¶ 14.  It has been recognized as a leading online news source and won a 2009 Orange County Press Club award for "Best Political Blog."  Chmielewski Decl. at ¶ 27.  Hundreds of people visit LIBERAL OC's web page on a daily basis, while many companies and political candidates post advertisements on LIBERAL OC's page.  Prevatt Decl. at ¶ 15.  The website has achieved recognition with the name LIBERAL, including appearing first in the search results of google.com for that name.  Chmielewski Decl. at ¶9, Exhibit 2 (Google search results for "Liberal OC").  This exchange of money, information, and ideas, not only makes the LIBERAL OC mark identifiable to the general public, but also significantly involves the mark with commerce.  Prevatt Decl. at ¶ 15.

On or around November 12, 2009, PEDROZA purchased numerous domain names, including the exact names and/or confusingly similar names to Plaintiffs, including www.madisonalexander-publicrelations.com; www.liberalocblog.com;

www.theliberalocblog.com. Defendant Art Pedroza's Answer (Answer) Cybersquatting Section ¶1 (pg. 1 ln. 15-17), Unfair Business Practices Section ¶ 1 (pg.3 ln. 5-7), Civil Conspiracy Section ¶ 1 (pg 3 ln. 20-21); Plaintiff's Requests For Admission Set One (RFA) 4-6; Defendant's Unverified Responses to RFAs (RFA Responses) 4-6. Importantly, the registration and use of these infringing marks came after Plaintiffs' use of the marks in commerce.

### 2.   Defendant's Use of Established Marks Created a Likelihood of Confusion

California courts have used eight factors to determine whether there is a likelihood of confusion when deciding trademark infringement cases: (1) Strength of the mark; (2) Proximity of the goods; (3) Similarity of the marks; (4) Evidence of actual confusion; (5) Marketing channels used; (6) Type of goods and the degree of care likely to be exercised by the purchaser; (7) Defendant's intent in selecting the mark; and (8) Likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (abrogated on other grounds). In the context of the Web in particular, the three most important Sleekcraft factors are similarity of the marks, the relatedness of the goods or services, and the simultaneous use of the Web as a marketing channel. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (internal quotations omitted) (abrogated on other grounds). As discussed below, these factors weigh heavily to concluding that Defendant's use of Plaintiffs established marks created a likelihood of confusion.

### a.  Similarity of the Marks

When assessing similarity of marks, Courts have held that "first, the marks must be considered in their entirety and as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning, and third, similarities are weighed more heavily than differences." *Id*. at 1206 (internal citations omitted) (abrogated on other grounds).

Here, Plaintiffs' trademarks – MADISON ALEXANDER and LIBERAL OC – are

1  identical to Defendants unlawful use of the domain names Defendant purchased.

2  Defendants used the Plaintiffs exact names and/or confusingly similar names by

3  purchasing the domain names of www.madisonalexanderpublicrelations.com;

4  www.liberaloc-blog.com; and www.theliberalocblog.com.

### b.  Relatedness of the Goods or Services and Marketing Channel

6  "Related goods are generally more likely than unrelated goods to confuse the public

7  as to the producers of the goods." *Brookfield Communs*., 174 F.3d at 1055. Where the

8  marks are identical, "confusion would follow as a matter of course" if the marks "were

9  used with identical products or services." *Id*. at 1056. "[T]he focus is on whether the

10  consuming public is likely somehow to associate [the defendant's] products with [the

11  plaintiff's]." *Id*. If both parties use the Web as a marketing and advertising facility,

12  "courts have consistently recognized [this factor] as exacerbating the likelihood of

13  confusion." *Brookfield Communs*., *Inc. v. West Coast Entertainment Corp.*, 174 F.3d

14  1036, 1057 (9th Cir. 1999).

15  Here, on or about November 12, 2009, PEDROZA purchased domain names

16  containing Plaintiffs' marks, including www.liberalocblog.com and

17  www.theliberalocblog.com, and redirected anyone who visited the web addresses to his

18  own ORANGE JUICE blog.  Chmielewski Decl. at ¶13.  Defendant PEDROZA

19  admitted that he did this in emails sent to Plaintiffs, saying "I also purchased

20  www.liberalocblog.com and now it is pointing to my blog".  Chmielewski Decl. at

21  Exhibit 3 page 1.  LIBERAL OC and Defendant's own website, ORANGE JUICE

22  BLOG, are competitor political websites that offer commentary on local, state, and

23  national political issues specifically relevant to Orange County, offering substantially

24  the same service but from very different perspectives.  Chmielewski Decl. at ¶ 11.

### c.    Defendant's Intent in Selecting the Mark

26  "This factor favors the plaintiff where the alleged infringer adopted his mark

27  with knowledge, actual or constructive, that it was another's trademark." *Brookfield*,

28  174 F.3d at 1059. Evidence that a party was attempting to engage in cybersquatting is

relevant to a determination of malicious intent. *See id*. n.20 (citing Minn. Mining & Mfg. Co. v. Taylor, 21 F. Supp. 2d 1003, 1005 (D. Minn. 1998)).

Here, Defendant purchased Plaintiffs marks with knowledge that it was another's trademark, as evidenced by his email that indicates PEDROZA purchased the domain names based on Plaintiffs marks in order to use them as leverage to get back what he termed "his" website, and to confuse consumers of the Liberal OC Blog who "certainly won't find your sad little blog now" because PEDROZA redirected them to his own blog. Chmielewski Decl. at Ex. 3.

### d.    Strength of the Mark

"The stronger a mark -- meaning the more likely it is to be remembered and associated in the public mind with the mark's owner -- the greater the protection it is accorded by the trademark laws." *Brookfield*, 174 F.3d at 1058. And "[w]hether a mark is weak or not is of little importance where the conflicting mark is identical and the goods are closely related." *Id*. at 1059. (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:76 (4th ed. West 2009)).  Plaintiff's marks are strong in their fields, however, as the appearance of their website first in the Google search results shows.  Chmielewski Decl. at Exhibits 1 & 2.

### e.    Degree of Care Likely to be Exercised by Consumer

"In the Internet context, in particular, entering a web site takes little effort -- usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership." *Brookfield*, 174 F.3d at 1057; *see also GoTo.com,* 202 F.3d at 1209 ("Navigating amongst websites involves practically no effort whatsoever, and arguments that Web users exercise a great deal of care before clicking on hyperlinks are unconvincing.").  Here, both parties make use of the Internet, a medium inherently susceptible to easy confusion, which weighs in favor of finding infringement.

Upon consideration of the Sleekcraft factors, it becomes clear that consumer

confusion is indeed likely.  As such, the second element of common law trademark infringement is amply proven and no genuine issue of material fact to be considered. As such, summary judgment is appropriate on Plaintiffs' claims of common law trademark infringement.

## B. CYBERSQUATTING UNDER 15 U.S.C. §1125(d)

Under the Anticybersquatting Consumer Protection Act ("ACPA"):

"A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark … and (ii) registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to that mark."

15 U.S.C. § 1125(d)(1)(A) (2011).

### 1.  Defendant Had a  Bad Faith Intent To Profit From the Marks

Under this statute, the court may consider the following factors to determine whether bad faith intent exists:

"(I) the trademark or other intellectual property rights of the person, if any, in the domain name… (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial of fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct …"

*Id*. §1125(d)(1)(B)(i).

Here, Defendants actions are clearly indicative of bad faith intent, as each of the factors listed above exist.

### a.  Defendant Had No Rights in the Domain Names

Defendants bad faith intent is evidenced by their use of the established

trademarks MADISON ALEXANDER and LIBERAL OC in the domain names they purchased, namely www.liberalocblog.com; www.theliberalocblog.com; and www.madisonalexanderpublicrelations.com.  Answer Cybersquatting Section  ¶1 (pg. 1 ln. 15-17), Unfair Business Practices Section ¶ 1 (pg.3 ln. 5-7), Civil Conspiracy Section ¶ 1 (pg 3 ln. 20-21); RFA 4-6; RFA Responses 4-6; Chmielewski Decl. at ¶¶ 11-15, 18, 32-36, 62, Ex. 3, Ex. 6; Prevatt Decl. at ¶¶ 6-9, 17-24. 27-29. As discussed above, Plaintiffs have a common law trademark on the marks "Madison Alexander" and "Liberal OC", due to the long term operation of the respective public relations business and political website.  Chmielewski Decl. at ¶¶ 2-9, 26-29, Ex. 1, Ex.2; Prevatt Decl. at ¶¶ 4, 14-16.  Defendant had no rights in these domain names as he did not have any permission to use them.  RFA 23-24; RFA Responses 23-24.

### b.   Defendant Redirected Consumers to Webpages Containing False and/or Misleading Information

Defendants bad faith intent is also evidenced by his actions of diverting and redirecting "consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site". 15 U.S.C. § 1125(d)(1)(A)(V).

After purchasing domain names based on the mark of Plaintiff MADISON ALEXANDER, Defendant PEDROZA linked this domain name to the homepage of NAMBLA, the North American Man Boy Love Association, which promotes adult males having sexual relations with underage boys and which Plaintiff neither promotes nor wants to be affiliated with. RFA 16; RFA Responses 16; Chmielewski Decl. at ¶¶19- 20, Exhibit 7 (NAMBLA Homepage).  PEDROZA also redirected the domain name based on Plaintiff's mark – www.madisonalexanderpublicrelations.com - to other destination websites of false and/or misleading information, including a blog about "Bad Public Relations" to imply that the company was a "bad public relations firm",

and then to a hemorrhoids webpage, which displayed graphic images of agitated hemorrhoids. Chmielewski Decl. at ¶ 27; Exhibit 3.  Not only do these actions indicate Defendant's intent to confuse Plaintiff's consumers and clients by redirecting them to destination websites of confusing, misleading and false information, but they clearly indicate Defendant's bad faith intent to do so in order to tarnish the image and reputation of MADISON ALEXANDER's and LIBERAL OC's marks by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the company.  Specifically, the redirect could reasonably confuse consumers by projecting onto the firm an image of illegal homosexual pedophilia and statutory rape, as well as impact the community youth activities and role played by MADISON ALEXANDER's owner, Daniel Chmielweski, if parents or youth organizations decided to conduct a web search on him and his company.  Chmielewski Decl. at ¶¶ 21-23.  As such, these strongly evidences Defendant's bad faith intent to profit from the mark by tarnishing MADISON ALEXANDER's trademark.

Additionally, PEDROZA purchased domain names based on the mark of Plaintiff LIBERAL OC – www.liberalocblog.com and www.theliberalocblog.com – and redirected anyone who visited these web addresses to his own competing ORANGE JUICE BLOG.  Chmielewski Decl. at ¶ 3, Ex. 3.  By diverting consumers and potential consumers of LIBERAL OC to its business rival ORANGE JUICE BLOG, Defendant caused disruption of LIBERAL OC's commercial advertising and promotion, as the value of a website to advertisers is dependent on readership, and the siphoning off of potential readers to alternate websites degrades the potential revenue that LIBERAL OC's site could generate.  Prevatt Decl. at ¶¶ 27-29.

Thus, Defendant diverted consumers to websites for his own commercial gain and with the intent to tarnish or disparage Plaintiffs' marks.  PEDROZA clearly acted with the bad faith intention to profit from his "cybersquatting".

**c.    Defendants Offered to Sell Domain Names to the Mark Owners and To Third Party's for Financial Gain**

Defendant's bad faith intent to profit from the marks is also evidenced by Defendants actions of offering to transfer, exchange and sell the domain names to the mark owners and then to third parties on www.godaddy.com without having used or intended to use the domain name in the bona fide offerings of any goods or services.

As previously stated, on or around November 12, 2009, DEFENDANTS purchased the domain names of www.liberalocblog.com; www.theliberalocblog.com and www.madisonalexanderpublic-relations.com in bad faith.  RFA 4-6; RFA Responses 4-6.  Defendant PEDROZA then shameless intended to profit from the purchase of these domain names by offering to sell the domain names back to Plaintiffs for "a price to be negotiated".  Chmielewski Decl. at Ex. 3.  When Plaintiffs refused, Defendant then posted the websites for sale on godaddy.com for the price of $1,000 or $2,000 each. Chmielewski Decl. at Ex. 4 & 5.

Thus, Defendants bad faith intent is indicated by his attempt to sell the domain names to Plaintiffs, the mark owners, and to third parties through godaddy.com for financial gain without having used or intended to use the domain names in the bona fide offering of any goods or services.

**2.    Defendants Registered and/or Used A Domain Name that was Identical or Confusingly Similar to Plaintiffs Mark**

The second element of this anticybersquatting statute is also satisfied, as Defendants registered and/or used a domain name that . . . is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A).

As discussed *supra* in Section A. Common Law Trademark Infringement, Plaintiffs' marks were established since 2004 and 2006 and the domain names registered by Defendant PEDROZA were deceptively similar to Plaintiffs marks.  Thus, the second element is satisfied, and summary judgment on anticybersquatting statute 1125(d) is appropriate.

## C. CYBERSQUATTING UNDER 15 U.S.C. §8131

Under the anticybersquatting statute that protects individuals like the Plaintiffs,

"Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person."

15 U.S.C. §8131 (1)(A).

On or about November 12, 2009, Defendants purchased the domain names of www.claudiogallegos.com, www.chrisleahprevatt.com, and www.ryangene-trabuco.com.  RFA 7-9; RFA Responses 7-9.  The websites names match exactly to the names of the living persons, particularly Chris Leah Prevatt, a blogger with LIBERAL OC; Claudio Gallegos, a writer with the LIBERAL OC; and Ryan Gene Trabuco, a website developer.  Prevatt Decl. at ¶¶ 1-3; Gallegos Decl. at ¶¶ 1-3; Trabuco Decl. at ¶¶ 1-3.

After purchasing these domain names, PEDROZA offered them for sale to Plaintiffs in a series of emails.  Chmielewski Decl. at Ex. 3.  After Plaintiffs refused, PEDROZA then posted each domain name for sale to the public at the price of $1,000 through the website godaddy.com. Prevatt Decl. at Ex. 1; Declaration of Claudio Gallegos of November 20, 2011 at Ex. 1; Declaration of Ryan Trabuco dated November 20, 2011 at Ex. 1.  Thus Defendant PEDROZA has clearly evidenced his intent to profit by selling the domain names for financial gain to each individual and to third parties.  As such, this statute has been violated and summary judgment is appropriate.

## D. PLAINTIFFS' DAMAGES

As discussed below, Plaintiffs seek the maximum statuory damages of $1000,000 per violation of 15 U.S.C. § 1125 (d) and actual damages for violation of their common law trademarks of $75,000 with respect to MADISON ALEXANDER and $15,000 with respect to LIBERAL OC.  All Plaintiff's additionally seek recover of attorneys'

fees and costs.

### 1.  Statutory Damages

Pursuant to 15 U.S.C. § 1117(d), "in a case involving a violation of [15 U.S.C. § 1125 (d)(1)], the plaintiff may elect…to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just."  Plaintiffs accordingly ask for the statutory damages with regards to all domain names involved in the present litigation: www.theliberalocblog.com, www.liberalocblog.com, www.madison-alexanderpublicrelations.com.

The purpose of the ACPA is to stop bad faith registration and use of domain names, including those that constitute personal names of individuals. *Schmidneiny v. Weber,* 319 F.3d 581, 582 (3rd Cir. 2003).  The primary purpose of the statutory damages under the ACPA is to punish the offender for their bad faith conduct and deter future violations.  *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson,* 573 F.3d 1186, 1205 (11th Cir. 2009).

In reviewing the amount of damages, the Court has wide discretion. In similar cases, Defendants have been held liable at various amounts, including $20,000 for a single domain name registered for a short time and from which defendants derived no profits (*Employers Council on Flexible Complensaion v. Feltman,* 2010 WL 2545435 at *7 (4th Cir. 2010)), $25,000 for a domain name for which plaintiffs could show no lost profits (*E. & J. Gallo Winery v. Spider Weds Ltd.,* 286 F.3d 270, 278 (5th Cir. 2002)), and $100,000 per violation when there was a lack of sales data necessary to show specific damages (*Kiva Kitchen & Bath, Inc. v. Capital Distributing, Inc.,* 319 Fed.Appx. 316, 320 (5th Cir. 2009).

In none of the cases cited was there the extensive evidence of Defendant's harmful intent as exists here.  There was not the malicious conduct in forwarding highly offensive sites, as PEDROZA did.  Accordingly, Plaintiffs ask for the maximum

statutory award with respect to all three violations.

## 2. Actual Damages

An award of actual damages is to compensate the plaintiff for their loss, as compared with the statutory award, which is to punish a defendant for their bad conduct.  Plaintiffs are entitled to Actual Damages with respect to their Trademark Infringement Claims.  Plaintiff MADISON ALEXANDER requests $75,000 in lost profits because of the loss in clientele and revenue due to Defendant's actions. Chmielewski Decl. at ¶¶ 41- 43.  LIBERAL OC requests $15,000 in lost advertising revenue.  Prevatt Decl. at ¶ 29.

## 3. Attorneys Fees and Costs

Plaintiffs are entitled under 15 U.S.C. § 1117 (a)(3) to "the costs of the action". Additionally, the Court may "in exceptional cases may award reasonable attorney fees to the prevailing party.  Id.  A violation is exceptional under § 1117(a) when it is malicious, deliberate or willful.  *Lindy Pen Co. v. Bic Pen Corp.,* 982 F.2d 1400, 1406 (9th Cir. 1993).  As shown *supra*, PEDROZA's actions were malicious, deliberate and willful and, hence, this should be considered an exceptional case and attorneys fees awarded.

Additionally, 15 U.S.C. § 8131 (2) states that the "court may also, in its discretion, award costs and attorneys fees to the prevailing party".  There is no need for the finding of an exceptional case under this statute, though certainly the standards for an exception case exist with regards to PEDROZA's registration of the domain names linked to the individual Plaintiffs.

## E. CONCLUSION

As shown above, it is appropriate for Summary Judgment to be entered against Defendant ORANGE JUICE BLOG and PEDROZA, as no genuine issue of material fact exists in any of the claims discussed above.  Plaintiffs request that the Court exercise its discretion to impose the maximum statutory penalties on Defendant, due to its outrageous conduct, and also request actual damages and attorneys' fees and costs.

1  //

2  DATED:  November 21, 2011                    Respectfully submitted,

3                                               GALLINGER LAW

4                                               /s/-Todd Gallinger

5                                               Todd Gallinger

6                                               Attorney for Plaintiffs