FILED

1 Art Pedroza

2 ORANGE JUICE BLOG

3 2309 N. Spurgeon St.

4 Santa Ana, CA 962706

5 P:714-606-7622

6 F:347-402-7122

7

8 In Pro Per

9

2011 DEC 16  PM 1: 34

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _____

10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15 THINKING LIBERALLY MEDIA, INC.   )   **CIVIL Action No.: SACV10-00139 AN**

16 DBA THE LIBERAL OC, a California   )

17 Corporation; MADISON ALEXANDER PR,   )   MEMORANDUM OF POINTS AND
18 INC., a California Corporation; DANIEL        AUTHORITIES IN REPLY TO
   CHMIELEWSKI, an individual; CHRIS   )   PLAINTIFFS' NOTICE OF MOTION AND
19 PREVATT, an individual; RYAN TRABUCO,      MOTION FOR PARTIAL SUMMARY
   an individual; and CLAUDIO GALLEGOS,   )   JUDGEMENT
20 an individual                                      )
                                                Hearing Date: Dec. 19, 2011
21                                             )
                                                Time: 8:30 am
22                PLAINTIFF,                   )
                                                Place: Courtroom 9D
23        vs.                                  )
                                                Before: District Judge David O. Carter
24 Art Pedroza                                 )

25        DEFENDANT

26 _____

27 Attached is Defendant's Response to Plaintiff's Motion for Summary Judgment.

28     NOTICE OF MOTION AND REPLY TO PLAINTIFFS' MOTION FOR PARTIAL
                        SUMMARY JUDGEMENT - 1

1   Art Pedroza

2   ORANGE JUICE BLOG

3   2309 N. Spurgeon St.

4   Santa Ana, CA 962706

5   P:714-606-7622

6   F:347-402-7122

7

8   In Pro Per

9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15   THINKING LIBERALLY MEDIA, INC.      )   **CIVIL Action No.: SACV10-00139 AN**

16   DBA THE LIBERAL OC, a California     )

17   Corporation; MADISON ALEXANDER PR,   )   MEMORANDUM OF POINTS AND
     INC., a California Corporation; DANIEL    AUTHORITIES IN REPLY TO
18   CHMIELEWSKI, an individual; CHRIS    )   PLAINTIFFS' NOTICE OF MOTION AND
     PREVATT, an individual; RYAN TRABUCO,    MOTION FOR PARTIAL SUMMARY
19   an individual; and CLAUDIO GALLEGOS, )   JUDGEMENT
     an individual
20                                        )

21                                        )

22              PLAINTIFF,                )

23       vs.                              )

24   Art Pedroza                          )

25              DEFENDANT

26   _____

27

28

               MEMORANDUM OF POINTS AND AUTHORITIES - 1

# TABLE OF CONTENTS

I.    INTRODUCTION..............................................................................3

II.   SUMMARY OF FACTS...................................................................3

III.  EVIDENTIARY MATTERS ...........................................................3

IV.   ARGUMENT ...................................................................................4

    A.    COMMON LAW TRADEMARK INFRINGEMENT ...........................4

        1.  Defendant Did Not Infringe on the Plaintiffs' Marks.......................4

        2.  Defendant Did Not Create a Likelihood of Confusion ....................6

            a.  Similarity of the Marks ...........................................................6

            b.  Relatedness of the Goods or Services and Marketing Channel.7

            c.  Defendant's intent in selecting the Mark.....................................8

            d.  Strength of the Mark ...............................................................8

    B.    CYBERSQUATTING UNDER 15 U.S.C. §1125(d) ..............................9

        1.  Defendant did not Have a Bad Faith Intent to Profit from

           the Marks.......................................................................................9

            a.  The Defendant did have a Right to the Domain Names .....10

            b.  Defendant did not Redirect Consumers to Webpages Containing

               False and or Misleading Information.....................................10

            c.  Defendant had the Right to Offer to Sell the Domain Names to the

               Mark Owners and to Third Party's for Financial Gain.....11

        2.  Defendant had a Right to Use a Domain Name that was Similar to the

           Plaintiffs Mark .............................................................................12

C.   CYBERSQUATTING UNDER 15 U.S.C. §8131 ...................................12

D.   PLAINTIFFS' DAMAGES ...........................................................13

     1.   Statutory Damages ........................................................14

     2.   Actual Damages  ...........................................................14

E.   CONCLUSION ..............................................................................15

## TABLE OF AUTHORITIES

15 U.S.C. § 1225  ...................................................................4, 10, 14, 15

15 U.S.C. § 8131 .............................................................................4, 14

F.R.C.P. 56 .............................................................................................6

*L.L. Bean, Inc. v. Drake Publishers, Inc.*

     811 F.2d 26, 28 (1st Cir. 1987) .........................................7

*Hormel Foods Corp. v. Jim Henson Prods,*

     73 F.3d 497 (2d Cir. 1996) ...............................................7

*Utah Lighthouse Ministry v. Found for Apologetic Info. & Research*

     527 F.3d 1045 (10th Circ. 2008) ......................................11

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

### I.   INTRODUCTION

3

4

Defendant's response to the Plaintiff's motion for Summary Judgment, with respect to their

5

claims of common law copyright infringement and "Cybersquatting" in alleged violation of 15

6

U.S.C. §§ 1225 (d) and 8131 (formerly 1229).

7

Defendant does not believe that the Plaintiffs' have prevailed in making their case and that they

8

are not due to any damages or attorneys' fees or costs.

9

### II.   SUMMARY OF FACTS

10

Plaintiffs' argue that the Defendant's former blog, the Orange Juice blog, and the Plaintiff's

11

blog, the Liberal OC, were in competition for readers and advertisers.  They do not offer up any

12

proof of this.  The fact is, the Orange Juice at the time was the dominant political blog in Orange

13

County politics, while the Liberal OC was a much less popular blog.  See Exhibit 1 for proof of

14

this in the form of readership data, from an article that was published in the Orange Juice blog on

15

August 2, 2009.  There you will see that the Orange Juice blog, at the time, was averaging about

16

40,000 readers per month, while the Liberal OC was only averaging about 15,000 readers per

17

month.

18

The Orange Juice blog was not a partisan blog.  The writers at the Orange Juice hailed from

19

every political party and the blog's approach was non-partisan.  The Liberal OC was strictly a

20

left-leaning blog.

21

There was no competition for advertisers either.  Most of the Orange Juice blog's small

22

advertising revenue came from Google Ads, which are controlled by Google.  The point of the

23

blog was not to make money but rather to have a political impact, which it did.  None of the

24

writers were paid.  They were all activists who were trying to make a difference.

25

The Plaintiffs' in their Summary of Facts, fail to mention that one of them, Ryan Trabuco, a

26

Republican who was the GOP candidate for the 69th Assembly District in 2006, under the name

27

of Ryan Gene Williams, had arranged to purchase the URL www.artpedroza.com, for the

28

Defendant, as a personal favor, when the Defendant ran for the Santa Ana City Council in 2008.

Thereafter Trabuco had agreed to change the website so that the Defendant could use it to promote his safety training business. The Defendant had asked Trabuco to sell it to him, but instead, at some point in the year 2009, Trabuco sold the URL, www.artpedroza.com, to his fellow Plaintiff, Dan Chmielewski, which Chmielewski himself admitted in a Liberal OC article he published on Nov. 12, 2009. See Exhibit 2.

The Defendant then asked Chmielewski to sell it to him, but he refused. Thereafter, on Nov. 12, 2009, the Defendant found it necessary to purchase a number of URLs on the open market, which contained the names of some of the Plaintiffs, in order to build up leverage so that he could trade them to Chmielewski for the URL, www.artpedroza.com.

Instead however the Defendant, Chmielewski, filed a lawsuit, in conjunction with Trabuco and several others. Clearly however it was Chmielewski and Trabuco who laid the groundwork for this disagreement by transferring the URL, www.artpedroza.com, to Chmielewski even though Trabuco had promised to use it for the benefit of the Defendant.

While it is true that the Defendant did not pay Trabuco for his help, the Defendant did in fact help Trabuco with is Assembly campaign in 2006. They were friends at the time and as such and no payment was ever discussed.

It should be noted that at the time Trabuco was working for Orange County Supervisor Janet Nguyen, a Republican. The Defendant had embarrassed Nguyen after she voted against letter grade ratings for Orange County restaurants. The Defendant had revealed that Nguyen's husband owned a restaurant that had received multiple citations from the Orange County Health Department. It is possible that Trabuco acted to sell the URL, www.artpedroza.com, to Chmielewski as political retribution. See Exhibit 3 for more information about the Nguyen restaurant scandal, in the form of an Orange Juice blog post that was published on Dec. 17, 2008.

## III.  EVIDENTIARY MATTERS

The Defendant was represented pro-per and he was at a distinct disadvantage early on in this case as he struggled to comply with the court rules. The Orange County Federal Court does not offer pro per counseling services. The Defendant traveled twice to the Los Angeles Court but their pro per counseling was limited and quite frankly not helpful.

The Plaintiffs' attorney took advantage of this and tried to seize the Defendant's computer, which would have exposed a lot of innocent people to harm, by the Plaintiffs, who quite frankly engaged in stalking and terrorizing behavior against the Defendant throughout this case.

The Defendant does not debate that his attempts at compliance were lacking. It is almost impossible to defend oneself pro per in these matters, but the Defendant lacked insurance and had no funds available for counsel. He also had to continue to work to support his family, which includes four children. He did the best that he could under the circumstances.

## IV. ARGUMENT

Summary judgment may be issued as to the merits of an entire case or specific issues of that case. F.R.C.P. 56(c). The moving party, in this case the Plaintiffs, must demonstrate the absence of a genuine issue of material fact. As you will see below, they failed to do so.

### A. COMMON LAW TRADEMARK INFRINGEMENT

The Plaintiffs are arguing that the Defendant infringed on their alleged common law marks "Madison Alexander" and "Liberal OC." However they failed to make their case.

#### 1. Defendant did not Infringe on the Plaintiff's Marks

Whether or not the Plaintiff's had established their marks as Common Law Trademarks is immaterial. The real question is did the Defendant infringe on their marks? The Defendant used the URLs he acquired as parody. He did not engage in commerce using those URLs. He did not attempt to confuse any consumers. His use of the marks was simply parody, which is protected free speech under the First Amendment.

Certain parodies of trademarks may be permissible if they are not too directly tied to commercial use. The basic idea here is that artistic and editorial parodies of trademarks serve a valuable critical function, and that this critical function is entitled to some degree of First Amendment protection. The courts have adopted different ways of incorporating such First Amendment interests into the analysis. For example, some courts have applied the general "likelihood of confusion" analysis, using the First Amendment as a factor in the analysis. Other courts have expressly balanced First Amendment considerations against the degree of likely

confusion. Still other courts have held that the First Amendment effectively trumps trademark law, under certain circumstances. In general, however, the courts appear to be sympathetic to the extent that parodies are less commercial. A risqué parody of an L.L. Bean magazine advertisement was found not to constitute infringement. L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 28 (1st Cir. 1987). Similarly, the use of a pig-like character named "Spa'am" in a Muppet movie was found not to violate Hormel's rights in the trademark "Spam." Hormel Foods Corp. v. Jim Henson Prods., 73 F.3d 497 (2d Cir. 1996).

It is also questionable that the Plaintiffs had in fact established their marks in common law. When you search for the phrase "Madison Alexander" on Google.com, you will find, as per Exhibit 4 that one of the top search results is for a photography company owned by a man named "Madison Alexander." And the second search result is for another company owned by a public speaker named "Madison Alexander." Another man by the same name has a Facebook page whose URL includes "Madison Alexander." And there are no less than seven people named "Madison Alexander" in Linkedin.com, as per Exhibit 5. And of course there are the most famous "Madison Alexanders" – Founding Fathers James Madison and Alexander Hamilton.

The URL the Defendant purchased was "www.madisonalexanderpublicrelations.com." If Plaintiff Chmielewski was so worried about this URL, why didn't he buy it before? And now that he does own it, as it was returned to Godaddy.com, why isn't he using it now? It would be a simple matter to forward it to his other website, but currently it is not in use, as per Exhibit 6. Wouldn't it be confusing to his customers now if they were to find this URL and find that it was an advertisement for GoDaddy? Plaintiff Chmielewski is seeking damages because the Defendant bought this URL and used it, but he isn't even using it now. In fact the URL is being used to promote GoDaddy.com's products.

The Plaintiffs also alleged that they own a common law trademark of "Liberal OC." But is this a mark used in commerce? The Liberal OC blog is a website run by unpaid writers who are not professional journalists. Their readership continues to be lower than the Orange Juice blog – and even the Defendant's new blog, the New Santa Ana blog, gets higher readership than the Liberal OC, as per Exhibit 7. Ultimately we must ask, what commerce exactly are they engaged in?

The Liberal OC does not sell their articles. Anyone can read them for free. They don't sell any products either. The only thing they do sell is advertising. They did not provide in their motion any facts to support that they even make any money with their advertising. A look at their website reveals that most of their ads are Google Ads – and they have apparently given an ad to their attorney, Todd Gallinger, perhaps in trade for his services?

If the Liberal OC is not in fact engaged in commerce, they cannot make an argument that they have a common law trademark.

### 2. Defendant Did Not Create a Likelihood of Confusion

The Plaintiffs argued that there was a likelihood of the alleged infringing marks being confused with theirs. However, for that to happen the public would have to first find the URLS that the Defendant purchased. Plaintiff Chmielewski admitted, in an article attached as Exhibit 2, that "Art emailed an offer to swap, but in looking at the URLs he bought, no one searches for my business or the individuals by those names with the possible exception of Claudio Gallegos or Supervisor Janet Nguyen."

Even if the public had found the URLs in question, would they necessarily have confused them for the entities owned by the Plaintiffs? That simply wasn't proven by the Plaintiffs.

The reality is that the Defendant did not use the URLs to engage in similar products or services – or for any commerce at all. He used them strictly for parody. And the Defendant did not engage in widespread marketing of the URLs in question. If anything, the Plaintiffs brought more attention to the marks in question in their own articles, such as Exhibit 2.

As the Plaintiffs presented in their Memorandum of Point and Authorities in support of their Motion for Summary Judgment, there are eight factors to determine whether there is a likelihood of confusion when deciding trademark infringement cases. But the Plaintiffs failed to make their case on each of those factors.

### a. Similarity of the Marks

The Plaintiffs admitted that the Courts have held that "first, the marks must be considered in their entirety and as they appear in the marketplace; and second, similarity is adjudged in terms

of appearance, sound and meaning, and third, similarities are weighed more heavily than the differences." *Id.* At 1206 (internal citations omitted) (abrogated on other grounds).

The fact is, the Defendant did not use the URLs he acquired to sell competing goods or services. It would be one thing had he set up the URLs to provide public relations services or allegedly liberal blogging, but he didn't. In point of fact, the URLs were used as parody.

When the Defendant linked the URLS he bought, on the open market, to various sites he did so with parody in mind and he was engaging in his First Amendment right to free speech.

### b.   Relatedness of the Goods or Services and Marketing Channel

The Plaintiffs admitted that "confusion would follow as a matter of course" if the marks were used with identical products or services. *Id.* At 1506. That is true, but the Defendant didn't use the URLs he purchased to provide identical products or services. In fact they were used as parody.

The Plaintiffs are arguing that the "Liberal OC blog" is used as a marketing and advertising facility. No, it is not. It is used to publish the work of unpaid writers. The ads on that site are incidental and don't in fact raise much income at all. The purpose of their site is the same purpose as the Orange Juice blog – to change political opinions.

The Defendant didn't use the URLs he bought to produce any goods or services that would confuse consumers. And he did not place any advertising on those URLs. Plaintiff Chmielewski himself admitted that it was unlikely that anyone would have searched for the URLs the Defendant bought. They were an inside joke at best.

### c.   Defendant's intent in selecting the Mark

As outlined above, the Defendant's intent was parody, which is covered under the First Amendment. It was not his intent to infringe any Marks and in point of fact neither "Madison Alexander Public Relations" nor "the Liberal OC Blog" were registered trademarks when the Defendant bought the URLs in question.

Plaintiffs are arguing that the Defendant had malicious intent. His intent though was parody, which is protected by the First Amendment.

MEMORANDUM OF POINTS AND AUTHORITIES - 9

1  Even if the Defendant said that readers wouldn't find their site, the reality is that Plaintiff

2  Chmielewski admitted himself in an article attached as Exhibit 2, that "Art emailed an offer to

3  swap, but in looking at the URLs he bought, no one searches for my business or the individuals

4  by those names with the possible exception of Claudio Gallegos or Supervisor Janet Nguyen."

5  **d.  Strength of the Mark**

6  The Plaintiffs' argument stretches credibility.  Do they really think that customers of

7  Madison Alexander Public Relations would confuse a website depicting a picture of hemorrhoids

8  with a public relations company?  Do they really think that readers of the Liberal OC would

9  confuse a website pertaining to an association of perverts with their blog?  Plaintiff Chmielewski

10  didn't even think anyone would find the URLs in question!

11  The reality is that the Liberal OC doesn't even have a very solid core of readers.  According

12  to Quantcast.com, the most significant blog rating service, 77% of the people who visit the

13  Liberal OC blog do so as "passers-by."  And their average Monthly Visits per Person is less than

14  two!  See Exhibit 8.

15  The Plaintiffs clearly failed to make relevant arguments that the Defendant violated their

16  Trademarks and so their Summary Motion for Judgment should be rejected.

17  **B.  CYBERSQUATTING UNDER 15 U.S.C. §1125(d)**

18  The Plaintiffs must prove that the Defendant had a bad faith intent to profit from the marks in

19  question, in order to prove their claim of Cybersquatting.

20

21  **1.  Defendant did not Have a Bad Faith Intent to Profit from the Marks**

22  15 U.S.C.S § 1125(d)(1)(B)(ii), precludes a finding of bad faith when the defendant had

23  reasonable grounds to believe that the use of a domain name was a fair use or otherwise lawful.

24  Thus, a defendant alleging parody under this safe harbor provision must prove that his use of the

25  trademark in the domain name was fair use or otherwise lawful.  ACPA provides nine non-

26  exclusive factors to determine whether the use of a trademark involves bad faith intent to profit.

27  15 U.S.C.S. § 1125(d)(1)(B)(i). Factor four in this list says that the court should consider "the

28  person's bona fide noncommercial or fair use of the mark in a site accessible under the domain

MEMORANDUM OF POINTS AND AUTHORITIES - 10

name." This fourth factor enunciated by the ACPA seems to support the safe harbor provision by directing the court to consider the non-commercial or fair use of the mark.

An example of parody defense under the ACPA safe harbor provision is the case of Utah Lighthouse Ministry v. Found for Apologetic Info. & Research, 527 F.3d 1045 (10th Circ. 2008). Plaintiff, Utah Lighthouse Ministry (ULM), was created to criticize the Church of Jesus Christ of Latter-day Saints (LDSs). ULM had website in which it sold books and displayed their criticism against LDSs. The defendant, Foundation for Apologetic Info. & Research (FAIR), is a New York foundation that responds to criticisms of the LDSs church. FAIR had its own website and also created a website parodying ULM's website, which had similar content and graphics to those found in ULM's website. The parody site had language similar to the one found in ULM's site but distorted and with the words "Destroy, Mislead, and Deceive" written across the stripes.

The district court held, and the court of appeals affirmed, that there was no evidence that defendant used its mark in connection with the sale of goods or services, or that defendants' use was likely to cause confusion among consumers. The court further said that the FAIR website was a parody and there was little, if any, likelihood of confusion or that consumers would not recognize it as a parody website. Additionally, under ACPA's safe harbor provision, defendant reasonably believed that the use of ULM's domain name and trademark was legal.

A key point to consider here is that there was no paid advertising on any of the URLs that the Defendant purchased. And no goods or services were offered on these URLs. As such there was no intent at all to profit from the marks. Also, the fact that there was advertising on the Orange Juice blog is immaterial. There was no commerce at all on the actual URLs that the Defendant purchased. They were merely used as parody.

### a. The Defendant did have a Right to the Domain Names

The Defendant did not need permission to use the URLs he purchased. They were not under federal trademark and they were not clearly under common law trademark either. Moreover, they were available for purchase on the open market – and even now that the Plaintiffs own the URLs, they are not being used to market their alleged goods or services.

Parody is an allowed use of marks and that is exactly what the Defendant did. He bought the URLs to poke at the Plaintiffs. That is protected free speech.

### b. Defendant did not Redirect Consumers to Webpages Containing False and or Misleading Information

Here again the Plaintiffs are arguing that consumers would be redirected from their web pages to the URLs purchased by the Defendant. Again, Plaintiff Chmielewski's own words are fairly damning. Plaintiff Chmielewski wrote, in an article attached as Exhibit 2, that "Art emailed an offer to swap, but in looking at the URLs he bought, no one searches for my business or the individuals by those names with the possible exception of Claudio Gallegos or Supervisor Janet Nguyen."

Chmielewski admitted that it was unlikely that consumers would even find the URLs that the Defendant purchased.

Clearly the sites that the Defendant forwarded the URLs to were meant to be construed as parody. And it is intellectually dishonest for the Plaintiffs to complain about the forwarding to the NAMBLA site when they defended perverts in a post published on April 1, 2010, which is attached as Exhibit 9. In that post they ridiculed the Defendant because he had asked the Santa Ana Police Department to investigate instances of men having sex with other men at Santa Ana's Santiago Park. If they are so against being linked to NAMBLA, why did the Defendants appear to defend the practice of men having sex at the park with other random men – with playgrounds nearby?

The fact is, none of the websites the URLs were forwarded to contained false or misleading information. They were legitimate websites. The URLs were forwarded to these sites, again, as parody, which is protected free speech under the First Amendment.

And again the Plaintiffs argued that the Defendant profited from the URLs he purchased. He did not. In point of fact he did not have any paid advertising on those sites. The paid advertising was on the Orange Juice blog, not on the URLs he purchased. They were not used to promote any commerce or services. They were only used as parody.

MEMORANDUM OF POINTS AND AUTHORITIES - 12

1
2

      **c.**   **Defendant had the Right to Offer to Sell the Domain Names to the Mark Owners and to Third Party's for Financial Gain**

3
4
5
6
7

The Defendant offered to swap his URLs to the Plaintiffs in return for the URL, www.artpedroza.com that Plaintiff Trabuco had sold to Trabuco. Plaintiff Chmielewski admitted as much when he wrote in an article, as per Exhibit 2, that "Art emailed an offer to swap, but in looking at the URLs he bought, no one searches for my business or the individuals by those names with the possible exception of Claudio Gallegos or Supervisor Janet Nguyen."

8
9
10
11
12

Plaintiff Chmielewski refused to swap URLs, and so the Defendant put them up for sale, and used them as parody. It was not the intent of the Defendant to profit from the URLs. In fact he offered to trade them to Plaintiff Chmielewski. They were put on sale merely to build leverage in the hopes that Chmielewski would relent and swap URLs with the Defendant. Instead, Chmielewski filed a lawsuit when the Defendant clearly wanted to settle the matter amicably.

13
14
15
16
17
18

The Plaintiffs even acknowledged in their Motion for Summary Judgment that the Plaintiff did not use or intend to use the domain names in the bona fide offerings of goods and services, which means they are admitting that the Defendant was not intending to use the sites to conduct commerce or offer goods or services. They were only ever used as parody. When the Plaintiffs filed their lawsuit, the Defendant opted to return the sites to Godaddy.com. The Plaintiffs acquired the sites at the regular price, and to date have yet to even use the sites, as mentioned previously.

19
20
21

      **2.**   **Defendant had a Right to Use a Domain Name that was Similar to the Plaintiffs Mark**

22
23
24

As discussed earlier, the Defendant had a right to purchase the Domain Names for use as parody. And the courts have found, as referenced earlier, that such uses are protected free speech, as long as no goods or services are being sold. The Defendant did not use the URLs to conduct any commerce. As such this argument must be dismissed.

25
26

### C. CYBERSQUATTING UNDER 15 U.S.C. §8131

27
28

The Plaintiffs argue that "Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that

MEMORANDUM OF POINTS AND AUTHORITIES - 13

person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person." 15 U.S.C. §8131 (1)(A).

Isn't that precisely what Plaintiff Ryan Trabuco did to the Defendant?  Trabuco registered www.artpedroza.com, then sold it to Plaintiff Chmielewski, at a profit.  Chmielewski admitted this in a post published on Nov. 19, 2009, (Exhibit 2) when he wrote "I own www.artpedroza.com.  I have since this summer."

Chmielewski then gloats that the Defendant never owned that URL.  Well, the Plaintiffs never owned any of the websites that the Defendant bought either.

With regard to the websites that referred to Plaintiffs Claudio Gallegos, Ryan Trabuco and Chris Prevatt, the Defendant offered to trade all of these, every single one, for the one website, www.artpedroza.com. Plaintiff Chmielewski turned that offer down, by his own admission. Then these Plaintiffs had the nerve to file suit with Unclean Hands.

The fact is, the Defendant used these sites for parody, which as has been explained is allowed as free speech under the First Amendment.  The Defendant did not profit from any of the URLs he purchased in any way.  In fact he lost money when he returned them to GoDaddy.com.  The only one in this scenario who profited from selling a URL with someone else's name was Plaintiff Trabuco, when he sold www.artpedroza.com to Plaintiff Chmielewski.

The Plaintiffs' request for damages under 15 U.S.C. §8131 should be rejected as they failed to make their case and they filed the lawsuit with Unclean Hands.

## D.  PLAINTIFFS' DAMAGES

The Plaintiffs demand for damages under 15 U.S.C. §1125 (d) should be summarily rejected as the Defendant used the URLs in question for parody, which is protected free speech under the First Amendment.

The Plaintiffs failed to prove that the Defendant engaged in commerce using the URLs. They in fact failed to prove any of the points they made in their Motion for Summary Judgment.

MEMORANDUM OF POINTS AND AUTHORITIES - 14

Their request for attorney's fees should likewise be rejected as they did not make a case and this matter never should have been brought to the court in the first place. The Defendant, by their own admission, tried to arrange a swap of the URLs, which would have cost them nothing. Instead they filed a malicious lawsuit with no grounds to stand on, wasting the court's time and the Defendant's time. None of this was necessary. All of this could and should have been resolved amicably as the Defendant had attempted to do so.

### 1.   Statutory Damages

The Plaintiffs did not succeed in proving a violation of 15 U.S.C. § 1125 (d)(1) and as such their request for Statutory Damages should be denied.

While it is true that the purpose of the ACPA is to stop bad faith registration and use of domain names, including those that constitute personal names of individuals, the Plaintiffs failed to prove that the Defendant engaged in bad faith conduct. Even worse, the Plaintiffs themselves filed this lawsuit with unclean hands – they did to the Defendant precisely what they are accusing him of doing to them.

The Defendant used the URLs he purchased as parody, which is protected free speech. Were the sites that the URLs were forwarded to offensive? Or was it merely humor? The Plaintiffs have attacked the Defendant on their blog, the Liberal OC, 172 times, often in very offensive posts, as per Exhibit 10. As such they have no right to complain when they are treated similarly. Their request for Statutory Damages should be summarily rejected.

### 2.   Actual Damages

The Defendant had the right to use the URLs he purchased as parody. The Plaintiffs failed to prove that the Defendant harmed them. They failed to prove that the Plaintiff committed any of the violations they charged him with. In fact if anyone was harmed it was the Defendant. As such their request for Attorneys fees and costs should be rejected.

### E.  CONCLUSION

As shown above, it is not appropriate for Summary Judgment to be entered against Defendants ORANGE JUICE BLOG and ART PEDROZA as the Plaintiffs absolutely failed to

prove that they were harmed or that the Defendants committed any violations of intellectual property laws.

Defendants request that the Court dismiss this entire case and also dismiss all the Plaintiffs' requests for damages and attorneys' fees and costs.

Dated: December 15, 2011                    Respectfully submitted,


Art Pedroza

IN PRO PER

2309 N. Spurgeon St.

Santa Ana, CA 92706

MEMORANDUM OF POINTS AND AUTHORITIES - 16

**PROOF OF SERVICE**

I do hereby declare that I am a citizen of the United States employed in the County of Orange, over 18 years old and that my business address is 550 South Main St., Orange, CA 92868.  I am not a party to the within action.

On December 15, 2011, I served the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGEMENT on all other parties to this action by placing a true copy of said document in a sealed envelope in the following manner:

[X](BY U.S. MAIL) I placed such envelope(s) addressed as shown below for collection and mailing at Santa Ana, California, following our ordinary business practices.  I am readily familiar with this office's practice for collecting and processing correspondence for mailing.  On the same day, that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

[] (BY AIRBORNE EXPRESS) I placed such envelope(s) addressed as shown below for collection and delivery by Airborne Express with delivery fees paid or provided for in accordance with this office's practice.  I am readily familiar with this office's practice for processing correspondence for delivery the following day by Airborne Express.

[] (BY FACSIMILE) I caused such document to be telefaxed to the addressee(s) and number(s) shown below, wherein such telefax is transmitted that same day in the ordinary course of business.

[] (BY PERSONAL SERVICE) I caused such envelope(s) to be hand-delivered to the addressee(s) shown below.  A proof of service signed by the authorized courier will be filed forthwith.

[X ]    (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[] (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

MEMORANDUM OF POINTS AND AUTHORITIES - 17

_Camille Pedroza_

Camille Pedroza

**NAME AND ADDRESS TO WHOM SERVICE WAS MADE**

TODD GALLINGER

20 Truman, Suite 109

Irvine, CA 92620

MEMORANDUM OF POINTS AND AUTHORITIES - 18

# EXHIBIT 1

- About Us
- Advertising Info

Orange County's top political blog

Search...    [Search]

- Home
- About Us
- Advertising Info

- RSS Feed
- Twitter
- Facebook

[🔍] [_____] [Search]

By
*Admin*
— August 2, 2009 **Posted in:** "The OC", blogs, Fresh Juice, LibOC, red county

**2012 NEW Party Bus $29/pp**
866-323-4386 new years special Bus, Hummer, Escalade, VIP club pax
www.finlackdiamondlimos.com

AdChoices ▷

Powered by Mox Banner Ads



Pity the poor bloggers at the fading Red County and the Liberal OC blogs. While they are spending more and more of their time bashing us, their numbers just aren't holding up of late.

According to **Blognetnews.com's** weekly political blog influence index, we are currently rated #2, while Red County/OC is all the way down at #20.

And **Alexa.com** shows (see the graphic above) that the Orange Juice blog is absolutely trashing all the local blogs in the very important search category.

And check out our annual **Sitemeter statistics** in the graphic below:

- ○ anon on Port Authority: Occupy OC reports for duty in Long Beach
- ○ THE GREAT ONE on Port Authority: Occupy OC reports for duty in Long Beach
- ○ THE GREAT ONE on Pujols An Angel, Tebow To Raiders
- ○ skallywag on Port Authority: Occupy OC reports for duty in Long Beach
- ○ skallywag on Port Authority: Occupy OC reports for duty in Long Beach
- ○ Demagogue on Pujols An Angel, Tebow To Raiders
- ○ Ron & Anna Winship on Who is the Peace and Freedom Candidate for 2012?
- ○ Geoff Willis on "We're Going to Disney World" State Senator Tells Disabled Son, Then Beats Him

- **SAUSD Threads**



NEW 2011-12 Thread!
2009-summer 2011
2006 SAUSD (Archive)
2007 SAUSD (Archive)
2008 SAUSD (Archive)



Red County does not allow anyone to see their readership data, but the **Liberal OC** does, and it ain't pretty:

Maybe Red County and the Liberal OC would do better if they weren't such one-sided hacks for their respective political parties? When you consider the low ratings or our California State Legislators, our Governor and the U.S. Congress, it is obvious that the voters don't trust the red and blue parties anymore.

Our promise to you here at the Orange Juice is that we will report all sides – we will go after bad red and blue politicians. And NONE of us are paid political hacks. We do what we do as a public service, period. This is a blog with NO political consultants or P.R. hacks on staff. I will NEVER allow such people to blog for me.

Thanks for making the Orange Juice blog the #1 political blog in Orange County!

**One Mom's Secret**
And how it paid for her kid's school field trip.
www.sweebud.com       AdChoices ▷

**Tags:** alexa, blognetnews, blogs, liberal oc, red county, sitemeter

## 2 Comments

1. Reply
   cook
   Posted August 2, 2009 at 3:33 PM

   Sex and gossip sells.

2. Reply
   Art Pedroza
   Posted August 2, 2009 at 6:06 PM

   #1,

   I took a creative writing class at UCI some years ago. The professor said that conflict sells – and sex

2009 SAUSD (Archive 2)
SAUSD News 11-09 (2)
SAUSD News Archive 1

- "New Santa Ana"
  - Richardson loses his 33 percent pay hike, despite Nguyen's support
  - New dining options open at John Wayne Airport
  - Sanchez decorates Christmas tree with ornaments from Lampson Elementary
  - Solorio and Santa Ana to celebrate new water improvements in Diamond Park
  - Why did two Latino Planning Commissioners reject Mariscos Zamora's appeal?
  - Leading Assembly candidate Michele Martinez lands big endorsements

- Fullerton's Fringer Friends
  - More 2011 Fringie© Follies: Scariest Ghost of Fullerton Past
  - The Definition of a Cover-Up
  - The Fringies© Continue: Creepiest Political Stooge 2011
  - The 2011 Fringies© Are Here! Dumbest Thing Said By A Politician
  - Time For Another Fundraiser? Please Do!

- A Bubbling Cauldron: Costa Mesa blog
  - What A Great Evening!
  - Sanitary District Fireworks (Amended*)
  - Snoopy House Ready - City Calls For Volunteers
  - Snoopy's Progress
  - Snoopy House Construction Begins Saturday

- John Earl's Surf City Voice (HB blog)
  - Microplastics: Avoid polyester fabrics to help prevent ocean pollution
  - Surf City's Mayor Will Take Heavenly Flight
  - Investigation: Mayor Carchio stands in line at Albertsons for free knife
  - Mayor, Harper, Go After Mobile Home Board Without Public Input

- Advertiser

# EXHIBIT 2

UA-6771930-1

- Log In
- Register



Challenging Orange County's Right-Wing Noise Machine

- About Us
- Blog Links
- Terms of Use and Commenting Policy
- Contact Us
- Our Design
- Ad Rates
- Support Us
- Righeimarole

- Orange County – Local
- California
- National-US
- International

IF CONGRESS DOESN'T ACT,
MIDDLE-CLASS TAXES WILL GO UP.    [FIND OUT HOW MUCH YOU'LL PAY]


Powered by Max Banner Ads

# Why is Art Pedroza and the Orange Juice Blog Promoting Pederasty and Gay Porn Through Web Properties They Own?

November 19, 2009
By Dan Chmielewski

[ Like ]   Be the first of your friends to like this.



*I need to start this post with a story to set the stage to match the headline.*

I own www.artpedroza.com.

I have since this summer. The site was last used to promote Art's failed candidacy for Santa Ana City Council where he barely fended off convicted catsup thief Steve Rocco for second place.

12/14/11          Why is Art Pedroza and the Orange Juice Blog Promoting Pederasty and G...

Art Pedroza Case 8:10-cv-00138-DOC-RNB Document 74    Filed 12/16/11    Page 25 of 25    Page ID #:730

In posts over at the OJ <u>blog</u>, Art has been making fun of Tom Daly, a candidate for 4th District Board of Supervisors, for not locking up domain names related to his candidacy. Tony Bushala, Art's BFF (at least for now) acquired <u>Daly's URL</u> at Art's suggestion, which Art revealed to us in a recent email. When Art started commenting about how dumb Daly's campaign was, I redirected <u>www.artpedroza.com</u> to a post I wrote about Art last April Fool's day — the same post that used documents Art filed as part of his council candidacy to prove the value of the OJ blog was between $2,000 and $10,000 and how OJ had only raised about $500 in ad revenue for its first five years.

The intention behind buying his name was simple. Art makes stuff up out of whole cloth and many times, doesn't tell the truth to this own readers. I thought buying his name and having him discover it would mean he'd lay off of us or at least tell the truth. A sort of <u>insurance</u> policy, if you will.

Last Thursday, Art found out I own his name. And **he went ballistic**. Then he went on a buying spree at GoDaddy.com.

In this post on OJ, Art doesn't even have the intellectual honesty to <u>tell his readers the truth</u> about the identity of a "jilted client" and who acquired domain names he crows about.

From his post:

> "Trabuco also pals around with members of both political parties. In fact he sold one of his clientsâ€™ URLs to Dan Chmielewski, the editor of the failing Liberal OC blog. The move backfired though when **Trabucoâ€™s jilted client** ended up buying ryangenetrabuco.com, liberalocblog.com, theliberalocblog.com, and madisonalexandrpublicrelations.com. Chmielewski owns Madison Alexander Public Relations, but he no longer owns the URL by that name! The same jilted client also bought supervisorjanetnguyen.com, councilmanandrewdo.com, leessandwichesstanton.com, claudiogallegos.com, and chrisleahprevatt.com."

What Art fails to tell his readers is that **he is the jilted client** and that **he acquired the domain names in question**. There's an argument to be made that Art was never Ryan's client and Ryan was only a volunteer for Art's failed Council campaign; clients pay their consultants and Art never paid Ryan anything. Now, you'll have to scroll down the GoDaddy WhoIs links here, but see for yourself who exactly owns the domain names Art references in this post. For the owner of www.ryangenetrabuco.com, click <u>here</u>. For the owner of www.theliberalocblog.com, click <u>here</u>. For the owner of www.liberalocblog.com, click <u>here</u>. For the owner of www.madisonalexanderpublicrelations.com, click <u>here</u>. For the owner of www.claudiogallegos.com, click <u>here</u>. For the owner of www.chrisleahprevatt.com, click <u>here</u>. For the owner of www.leessandwichesstanton.com, click <u>here</u>. In an email to me, Art has also admitted to buying several domain names related to "Supervisor Janet Nguyen." Art also seems to be buying up web properties of his perceived political enemies. The owner of www.mayormiguelpullido.com is hidden (for an extra cost) but the site is redirected to OJ for those who need a "Captain Obvious" <u>check</u> on who owns it.

In an email sent to me last Thursday, entitled "Venganza," Art demanded I "cede" his URL to him and then buy the domain name associated with my <u>business</u>. He wants $1,000 for it on GoDaddy. He also wants $1,000 each for the domains associated with Ryan Trabuco, Chris Prevatt and Claudio Gallegos. And he wants $2,000 each for the domains associated with The Liberal OC.

Here's what he wrote in that Thursday email I have bolded some items for emphasis:

---